UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| AUSTIN VANN, by his next friends, | ) | | |
| FRANK VANN and ASHLEY VANN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:04-CV-493 |
| | ) | | (VARLAN/SHIRLEY) |
| JAMES STEWART, in his official capacity, | ) | | |
| MEMBERS OF THE ANDERSON COUNTY | ) | | |
| BOARD OF EDUCATION, and | ) | | |
| TERRI FERRY, in her official capacity, | ) | | |
| | ) | | |
| Defendants. | ) | | |

**MEMORANDUM OPINION**

Plaintiff Austin Vann alleges that his federal civil rights, along with Tennessee laws, were violated when defendants suspended him from school under Anderson County's zero tolerance policy. Plaintiff was suspended for one calendar year after he was found with a small pocketknife on school grounds. Defendants generally deny plaintiff's allegations.

This civil action is now before the Court for consideration of defendants' Motion for Summary Judgment [Doc. 16]. Defendants contend, *inter alia*, that plaintiff was given proper notice and an opportunity for a hearing, that there was a rational relationship between the punishment and the offense in the context of the government's interest in school safety, that plaintiff received the same punishment as other students who violate the zero tolerance policy, and that plaintiff's state law claims fail to state a theory of recovery for which relief may be granted. Plaintiff opposes the motion by arguing that defendants applied the wrong

standard for determining the appropriate level of discipline, which caused plaintiff to receive a meaningless hearing and resulted in an irrational decision.

For the reasons discussed herein, defendants' motion for summary judgment will be granted as to plaintiff's federal civil rights claims, and those claims will be dismissed. Consequently, the Court will decline to exercise supplemental jurisdiction over plaintiff's state law claims, and those claims will be remanded to the Anderson County Chancery Court for that court's consideration and determination.

**I.     Standard of Review**

Under Rule 56(c), summary judgment is proper if the record, taken as a whole, shows that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material fact lies upon the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *See id.*

The judge's function in considering a motion for summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *See id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See id.* at 250.

## II. Relevant Facts

On April 7, 2004, plaintiff, a sophomore at Anderson County High School, possessed a small pocket knife while on school grounds. Doc. 1-2 at 2. During his first period class, plaintiff discovered the pocket knife in his pocket and showed it to a few classmates, but he did not inform his teacher, nor did he dispose of it. *Id.* On the other hand, plaintiff did not open the pocket knife or display it in an offensive or threatening manner. *Id.*

Later that day, the school's assistant principal, Murrel Albright, was informed that plaintiff had threatened a female student with whom plaintiff had carried on a turbulent romantic relationship. *See* Doc. 19-13 at 1. *See also* Doc. 1-2 at 2. Assistant principal Albright called plaintiff into his office and asked him about the allegations. *See* Doc. 19-13 at 1. *See also* Doc. 1-2 at 2. Plaintiff denied making any threats. *See* Doc. 19-10 at 28. *See also* Doc. 1-2 at 2. Assistant principal Albright asked plaintiff whether he possessed "anything he shouldn't have." Doc. 19-13 at 1. *See also* Doc. 1-2 at 2-3. Plaintiff admitted

3

possessing the pocket knife and gave it to assistant principal Albright. *See* Docs. 19-13 at 1; 1-2 at 3.

Upon learning of the pocket knife, assistant principal Albright contacted plaintiff's mother and completed a disciplinary referral form, a zero tolerance report, and a notice of suspension and right to appeal. *See* Docs. 1-2 at 3; 19-13 at 2-4. The disciplinary referral form and zero tolerance report stated that the possession of the pocket knife was a violation of the local zero tolerance policy and that plaintiff was being suspended for one calendar year. *See* Doc. 19-13 at 2, 3. The notice of suspension and right to appeal was addressed to plaintiff's mother and stated that plaintiff had violated the local zero tolerance policy based on possession of a knife, resulting in a suspension for one calendar year, and that plaintiff had a right to appeal and request a hearing before the student Disciplinary Hearing Authority ("DHA"). *Id*. at 4. Plaintiff properly appealed and requested a hearing before the DHA. *See* Doc. 1-2 at 3.

On April 15, 2004, the DHA held a hearing, during which plaintiff, his attorney, assistant principal Albright, and others spoke. *See* Doc. 19-6. The hearing was led by Terri Ferry, the director of student services for Anderson County schools. *Id*. After assistant principal Albright explained what had occurred, Ms. Ferry asked plaintiff a series of questions about the incident and the alleged threats. *Id*. at 3. Plaintiff described in some detail the events of April 7, 2004, admitted possessing the pocket knife, but denied ever making any threats, and answered questions from members of the DHA. *Id*. at 3-4. Plaintiff's mother also spoke during the hearing, as did plaintiff's attorney. *Id*. at 7-12. At

4

the conclusion of the hearing, Ms. Ferry informed plaintiff that he could seek review of the DHA's decision by the school board, plaintiff apologized for possessing the knife at school, and plaintiff's attorney asked the DHA to consider imposing a "reasonable suspension" by reducing the suspension from one year to ten days. *Id*. at 13-14.

After a recess during which the DHA privately conferred, Ms. Ferry informed plaintiff that the suspension was affirmed. *Id*. at 14. The DHA members signed a form stating it found plaintiff "guilty." Doc. 60-11. Ms. Ferry also completed a report on the DHA hearing that summarized the facts, announced the DHA's decision, and informed plaintiff that he could seek review by the school board. *See* Doc. 19-7. While this report explains that plaintiff possessed the pocket knife in violation of the local zero tolerance policy, it does not discuss whether the DHA considered modifying the suspension. *See id.*

On May 13, 2004, during the Anderson County Board of Education meeting, plaintiff requested that it review the DHA decision. Doc. 1-2 at 6. Plaintiff, his mother, and plaintiff's attorney made brief statements to the board, but after hearing the presentation, it voted to deny a further review of plaintiff's suspension. *See* Docs. 1-2 at 6; 19-9 at 2.

Citing her deposition testimony, plaintiff alleges that Ms. Ferry told members of the DHA that their only role was to determine whether to affirm or overturn the suspension. Doc. 60-1 at 4-5 (referring to Doc. 60-3 at 2-3). Plaintiff also alleges that the members of the DHA, as evidenced by the deposition testimony of Sue Voskamp, a DHA member, believed that they were limited to only affirming or overturning the suspension, without also considering whether to modify the suspension. *See* Doc. 60-1 at 5 (referring to Doc. 60-9

5

at 2). In addition, plaintiff alleges that before plaintiff's request was considered by the board of education, Ms. Ferry repeated that the board's only role was to determine guilt or innocence. *See* Doc. 60-1 at 6. Defendant responds that DHA and school board members were aware that they could modify a suspension but simply did not do so in this case. *See* Doc. 78 (referring to Doc. 77-2 at 2-3). As will be more fully discussed later, while this is a genuine issue of disputed fact, the fact in dispute is not material to a determination of plaintiff's federal claims, which are dispositive in this action.[1]

**III. Discussion**

    A. <u>Tennessee's Zero Tolerance Policy Framework</u>

The suspension or expulsion of a student from a Tennessee secondary school is regulated by state statute and local school policy. *See* Tenn. Code Ann. §§ 49-6-3401, 49-6-4216. Broadly, certain school officials are permitted to suspend a student from school attendance for "good and sufficient reasons," including "possession of a knife . . ." § 49-6-3401(a)(8). In addition, Tennessee has authorized the expulsion of a student for committing two types of "zero tolerance" offenses. The procedure for imposing a suspension or expulsion is also mandated by statute. *See* § 49-6-3401(c).

---

[1] Whether this fact is material to the determination of plaintiff's state law claims is an issue the Court need not reach because it will decline to exercise supplemental jurisdiction over plaintiff's state law claims.

6

### i. *Zero Tolerance Offenses*

The first type of zero tolerance offense is specified by statute and mandates the expulsion for one year of any student found to be in possession of a firearm, illegal drugs or drug paraphernalia, or any student found to have committed a battery on school personnel. § 49-6-3401(g). The only exception to the one-year expulsion is that the local director of schools may modify the expulsion on "a case-by-case basis." *Id*.

The second type of zero tolerance offense is specified by local school boards pursuant to a statute that directs local school officials to adopt policies to confront certain conduct that threatens "safe and secure learning environments." § 49-6-4216(a)(1). Under the statute, therefore, school officials must file with the state education commissioner "written education policies and procedures" developed by the local school board that protect schools from the influence of "drugs, drug paraphernalia, violence and dangerous weapons" and that impose "severe disciplinary sanctions" for bringing contraband, including dangerous weapons, onto school property. § 49-6-4216(a). Unlike the one-year expulsion for a statutory zero tolerance offense, however, the sanction for a local zero tolerance offense "shall not necessarily result in a presumptive one calendar year expulsion . . . ." § 49-6-4216(b)(1).

In an effort to comply with § 49-6-4216, the Anderson County School Board adopted a zero tolerance policy that prohibited students from possessing any "dangerous weapon." *See* Doc. 19-5 at 4. A "dangerous weapon" was broadly defined to include "any dangerous instrument or substance, which is capable of inflicting any injury on any person." *Id*. The

7

stated punishment for violating this local zero tolerance policy is a one calendar year suspension from school attendance. *Id.*

In the instant action, plaintiff was suspended based on the second type of zero tolerance offense – violating the local zero tolerance policy adopted pursuant to § 49-6-4216. Plaintiff admitted possessing a pocket knife while on school property, and there is no dispute that plaintiff's conduct was a violation of the local zero tolerance policy. Thus, the gravamen of plaintiff's claim is that the imposition of the sanction in this case was constitutionally and statutorily flawed.

ii. *Imposition of Sanctions*

Under Tennessee law, when a principal, principal-teacher, or assistant principal concludes that a student has committed either type of zero tolerance offense, that official is required to follow certain procedures for imposing sanctions. Tenn. Code Ann. § 49-6-3401(c). *See also* Doc. 19-5 at 5-6. First, unless there is an emergency, an authorized school official may not impose a suspension until "that student has been advised of the nature of the student's misconduct, questioned about it, and allowed to give an explanation." § 49-6-3401(c)(1). *See also* Doc. 19-5 at 5. Second, in the case of a suspension for ten days or more, the school official must immediately provide written or actual notice to the student and a parent or guardian of the right to appeal the decision in writing within five days. § 49-6-3401(c)(4)(B). *See also* Doc. 19-5 at 5. Third, if the right to appeal is exercised, the appeal must be heard by a DHA appointed by the school board, which must give written notice of the time and place of the hearing, and the hearing must take place no more than ten days after

8

the beginning of the suspension. § 49-6-3401(c)(4)(C)-(D). *See also* Doc. 19-5 at 5-6. Finally, if dissatisfied with the decision of the DHA, the student or school official may request a review by the local board of education, which may grant or deny a hearing.[2] § 49-6-3401(c)(6). *See also* Doc. 19-5 at 6.

The DHA and board of education each "may affirm the decision of the principal, order removal of the suspension unconditionally or upon such terms and conditions as it deems reasonable, assign the student to an alternative program, or night school, or suspend the student for a specified period of time." § 49-6-3401(c)(5). *See also* doc. 19-5 at 6. The DHA must make a written record of its proceedings, including "a summary of the facts and the reasons supporting the decision." § 49-6-3401(c)(6). *See also* Doc. 19-5 at 6.

With respect to his federal claims, plaintiff alleges that the imposition of the one-year suspension was flawed because the DHA and school board failed to consider whether to modify plaintiff's one-year suspension. Plaintiff argues that the DHA's and school board's failures to consider the reasonableness of the one-year suspension resulted in violations of procedural and substantive due process and equal protection.

---

[2] By statute, the board of education is the final authority for review of all school suspensions, except for the case of a statutory zero tolerance offenses when one additional appeal may be made to the local director of schools. § 49-6-3401(c)(6), (g). *See also* Doc. 19-5 at 6. The statutes do not specify whether a final review or modification of a local zero tolerance offense by the local director of schools is permitted, but the Anderson County policy at issue in this case does not permit a review by the director of schools unless the student has committed a statutory zero tolerance offense. *See* §§ 49-6-3401(c)(6), (g); 49-6-4216; Doc. 19-5 at 6. Plaintiff was found to have violated the Anderson County zero tolerance policy; thus, the board of education was the final administrative authority.

9

With respect to his state claims, plaintiff alleges that the imposition of the one-year suspension was flawed because the DHA and school board failed to consider modifying the length of the suspension, thus treating the one-year suspension as presumptive. In addition, plaintiff alleges that the DHA failed to make a proper report of its proceedings by failing to specify the reasons supporting its decision. The failures, plaintiff alleges, resulted in violations of the Tennessee statutes regulating the imposition of school discipline.

The Court will address plaintiff's federal constitutional claims followed by plaintiff's state law claims.

B.  Due Process

Turning first to plaintiff's due process claims, a state cannot deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV, § 1. "Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions defined' by an independent source such as state statutes or rules entitling citizens to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

The Tennessee Constitution guarantees to Tennessee's students "the right to a free public education." *Leeper v. State*, 53 S.W. 962, 965 (Tenn. 1899) (citing Tenn. Const. art. XI, § 12). In fact, Tennessee requires students to attend school until a certain age. *See* Tenn. Code Ann. § 49-6-3001. Thus, it is undoubted that a Tennessee high school student enjoys a property interest in his high school education. *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir.

2000). Accordingly, a high school student cannot be deprived of that interest without due process of law. *See Goss*, 419 U.S. at 577.

Due process, however, is comprised of two components, both of which plaintiff claims were violated in his case. Procedural due process requires school officials to provide student with notice and an opportunity to be heard. *See id.* at 581. Plaintiff contends that his right to procedural due process was deprived when school officials failed to consider his argument for a modified punishment in violation of state law and local policy. Substantive due process requires the punishment bear some rational relationship to the offense. *See Seal*, 229 F.3d at 575. Plaintiff contends that his right to substantive due process was deprived when the school officials failed to consider modifying the punishment, yielding a punishment that bore no rational relationship to plaintiff's offense.

      i.    *Procedural Due Process*

Procedural due process requires that a state may not take away a student's public education because of a student's "misconduct without adherence to the minimum procedures required" by the Due Process Clause. *Goss*, 419 U.S. at 574. In school misconduct cases involving less than a ten-day suspension, procedural due process requires "oral or written notice of the charges against [the student] and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. Cases involving "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584. In every school

misconduct case, however, the purpose of the procedures must be to avoid "unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id.* at 581.

Plaintiff does not contend that the school discipline procedures required by the Tennessee statute and the Anderson County zero tolerance policy violated plaintiff's right to procedural due process. Instead, plaintiff advances the somewhat novel argument that it was defendants' failure to follow those procedures that resulted in the procedural due process violation. Thus, the issue for the Court's determination is whether the plaintiff's right to procedural due process was violated by defendants' alleged failure to follow the requirements of a valid school policy or state law.

The fact that a valid school policy or state law was not followed is not by itself significant in determining whether procedural due process has been violated. *See Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 226-27 (4th Cir. 1984) (citing *Atencio v. Bd. of Educ.*, 658 F.2d 774 (10th Cir. 1981)). Instead, it is the *degree* of the failure to follow the policy or state law that is significant. *Compare, e.g.*, *Killion v. Franklin Reg'l Sch. Dist.*, 136 F.Supp.2d 446 (W.D. Pa. 2001) (finding due process violation where school violated code by failing to provide written notification to student before hearing held) *with Duck v. Isle of Wright County Sch. Bd., et al.*, 362 F.Supp.2d 675 (E.D. Va. 2005) (finding no due process violation where principal failed to make required recommendation before punishment imposed). Thus, in a school misconduct case, a failure to comply with a valid school discipline policy or state law rises to the level of a procedural due process violation where the failure to comply is so significant or substantial that it could result in "unfair or mistaken

12

findings of misconduct" or an "arbitrary exclusion from school" by denying the student notice and an opportunity to be heard. *See Goss*, 419 U.S. at 581.

Plaintiff argues that members of the DHA and school board considered only whether plaintiff was "guilty or not guilty" and failed to consider whether the one-year suspension was a "reasonable punishment under the circumstances," as Tennessee statute and local policy require. Plaintiff contends that this failure effectively denied him the opportunity to be heard at the hearings because he was only seeking a modification of the length of the suspension and not contesting the underlying finding of misconduct. Defendants, in arguing for summary judgment, contend that plaintiff was given proper notice and hearings were held during which plaintiff, his attorney, and his parents were allowed to address school officials. Furthermore, plaintiff admitted he had possessed the pocket knife, which he acknowledged was a violation of the zero tolerance policy, and that he was aware that a violation of the zero tolerance policy could result in a one-year suspension.

Assuming, *arguendo*, the DHA and school board applied the improper standard when considering plaintiff's case, the Court cannot conclude that such a failure was so significant or substantial that it could result in "unfair or mistaken findings of misconduct" or an "arbitrary exclusion from school," because plaintiff was not denied notice or an opportunity to be heard. *See Goss*, 419 U.S. at 581. Procedural due process ensures that, *at a minimum*, a student will have the opportunity to rebut or otherwise explain the allegations levied against him. Where such an opportunity is provided, procedural due process is satisfied; it does not impose the additional requirement that the student's statements must be accepted. Nor does

13

it guarantee that school officials must apply any specific standard in evaluating the student's conduct.

In this case, the undisputed evidence is that plaintiff received notice of and actively participated in two hearings where he could rebut the finding of misconduct and/or explain his actions. School officials followed a procedure that allowed plaintiff, plaintiff's parents, and plaintiff's attorney to address the allegations of misconduct before the DHA and school board. Before both reviewing authorities, plaintiff was permitted to address the misconduct finding, which he did. Plaintiff challenged the allegation that he had threatened others, but he also admitted possessing the pocket knife in violation of the local zero tolerance policy. Having been allowed to challenge the finding of misconduct, procedural due process was satisfied, even though state law and local policy might require additional procedures. Accordingly, viewing the facts in the light most favorable to plaintiff, there is no genuine issue of disputed material fact and defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Therefore, plaintiff's procedural due process claim will be dismissed.

          ii.      Substantive Due Process

Turning next to plaintiff's substantive due process claim, in addition to providing protection to a student's property interest in education, as discussed above, the Due Process Clause also provides "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The right to attend public school, however, is not a fundamental right or liberty

14

interest. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-37 (1973). When a government action does not affect fundamental rights or liberty interests and does not involve suspect classifications, it will be upheld if it is rationally related to a legitimate state interest. *See Vacco v. Quill*, 521 U.S. 793 (1997); *Seal*, 229 F.3d at 575. In cases involving school discipline, substantive due process is violated only in the rare case that there is no "rational relationship between the punishment and the offense." *Brewer v. Austin Indep. Sch. Dist*, 779 F.2d 260, 264 (5th Cir. 1985); *quoted in Seal*, 229 F.3d at 575. *See also Wood v. Strickland*, 420 U.S. 308, 326 (1975). The Court also notes that "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion . . . ." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). *See also Bd. of Educ. v. McCluskey*, 458 U.S. 966 (1982).

Plaintiff's substantive due process claim flows from his procedural due process claim. That is, he argues that because the DHA and school board failed to consider modifying the one-year suspension according to state law and local policy, the punishment imposed by school officials bears no rational relationship to plaintiff's actual offense. By contrast, defendants, in seeking summary judgment, argue that the one-year suspension does bear a rational relationship to plaintiff's offense when viewed in light of the state's interest in school safety.

The Court cannot conclude that the punishment imposed by school officials in this case bore no rational relationship to plaintiff's offense. State authorities have expressed a legitimate interest in maintaining "safe and secure learning environments." See Tenn. Code

15

Ann. § 49-6-4216. In an effort to comply with state law adopted pursuant to that interest, local officials adopted a zero tolerance policy that includes a one year suspension for violations. Plaintiff admits that he possessed a pocket knife in violation of the local policy and that he was aware he could receive a one year suspension.

Assuming, *arguendo*, the DHA and school board applied the wrong standard in considering plaintiff's case, the Court cannot conclude that the officials' imposition of a one-year suspension crossed the line of legitimate government action, especially since it imposed a sanction that was specifically recognized in the Tennessee statute and local policy. Even considering plaintiff's contention that the school officials' action might have been harsh or unwise in view of the circumstances, the decision was not so flawed that it bore no rational relationship to plaintiff's offense. Accordingly, viewing the facts in the light most favorable to plaintiff, there is no genuine issue of disputed material fact and defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Therefore, plaintiff's substantive due process claim will be dismissed.

C.  Equal Protection

The Equal Protection Clause ensures that a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV § 1. In other words, "all persons similarly situated should be treated alike." *City of Cleburne, v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). *See also Richland Bookmark, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002).

Generally, government action is presumed valid if the classification of groups is rationally related to a legitimate state interest. *City of Cleburne, v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). *See also* 3 *Treatise on Constitutional Law* § 18.3 (3d ed. 1999). That presumption of validity yields to intermediate scrutiny when dealing with classifications based on gender or illegitimacy. *See* 3 *Treatise on Constitutional Law* § 18.3. The courts apply strict scrutiny when the classification involves suspect classes (*e.g.* race, alienage, national origin) or the exercise of fundamental rights. *See id.*

In determining whether a particular government action is rationally related to a legitimate state interest, the plaintiff bears the burden of demonstrating that "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [one] can only conclude that the actions were irrational." *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000).

Plaintiff argues that he was treated arbitrarily and differently that other students because the DHA and school board applied the wrong standard of review. Defendants, in seeking summary judgment, argue that plaintiff was not denied equal protection because plaintiff's suspension was rationally related to the legitimate government purpose of ensuring a safe and secure learning environment.

Plaintiff's equal protection argument is without merit. Plaintiff does not challenge the legitimacy of the government's interest in ensuring safe and secure learning environments. Nor does he show how the imposition of a one year suspension is unrelated to that government interest. Furthermore, plaintiff does not challenge the zero tolerance policies as

17

they are written, even though they specifically authorize the punishment plaintiff received. Plaintiff only challenges the failure to consider modifying the suspension, but that is not sufficient to show that imposition of a one-year suspension was so unrelated to the legitimate interest in safety and security that one could only conclude that the suspension is irrational. Accordingly, viewing the facts in the light most favorable to plaintiff, there is no genuine issue of disputed material fact and defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Therefore, plaintiff's substantive equal protection claim will be dismissed.

D. State Law Claims

Turning to plaintiff's state law claims, a district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c). Because the Court will dismiss the claims over which it has original jurisdiction in this case, the will Court decline to exercise supplemental jurisdiction over plaintiff's state law claims against defendants. *Id*. Accordingly, plaintiff's remaining claims will be remanded to the Anderson County Chancery Court for that court's consideration and determination.

## IV. Conclusion

Plaintiff alleges federal and state law claims arising from his suspension for violating a local zero tolerance policy. Defendants have moved for summary judgment, and for the reasons discussed herein, that motion will be granted as to plaintiff's federal due process and equal protection claims, and those claims will be dismissed. The Court will decline to exercise supplemental jurisdiction over plaintiff's state law claims, and those claims will be remanded to the Anderson County Chancery Court for that court's consideration and determination. As a result, this case will be dismissed.

ORDER ACCORDINGLY.

                                                s/ Thomas A. Varlan
                                                UNITED STATES DISTRICT JUDGE